TIMOTHY DURLEY,

                Plaintiff,

v.                                               Case No. 21-cv-153-pp

ROBERT AHLBORG,

                Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING MOTION TO CONSOLIDATE CASES (DKT. NO. 8)**

Timothy Durley, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant failed to provide him medical treatment for breathing difficulties he suffered from his severe asthma. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let an incarcerated plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 9, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $3.49. Dkt. No. 6. The court received that fee on March 1, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint alleges that on December 18, 2020, while the plaintiff was in restricted housing at Waupun, officers "chemically sprayed" Jovan Mull, who was in the cell next to the plaintiff. Dkt. No. 1 at 2. Nurse Robert Ahlborg "appeared" in front of the plaintiff's cell, and the plaintiff told Ahlborg that he needed his nebulizer treatment because he was having trouble breathing. Id. The plaintiff says he was supposed to be "pulled out & get assess by a nurse every time." Id. at 2-3. The plaintiff alleges that Ahlborg said that after he was

3

finished with Jovan Mull he would pull the plaintiff out and give him a nebulizer treatment; the plaintiff says Ahlborg walked off. Id. at 3. The plaintiff says that Ahlborg was made aware of the plaintiff's asthmatic needs but that he ignored them. Id. at 3.

The plaintiff says that he wrote to the Health Services Unit and an unnamed supervisor asking why he had not been given nebulizer treatment due to his being a severe asthmatic. Id. He alleges that "the[ir] reply was I never told staff nor a nurse," which the plaintiff says is a lie. Id. The plaintiff says a hallway camera will show that Ahlborg stepped up to the plaintiff's cell door. Id. The plaintiff also alleges that Ahlborg updated the plaintiff's health chart weeks later to reflect that the plaintiff had requested nebulizer treatment. Id. The plaintiff alleges that he's had trouble breathing and sleeping because he did not receive nebulizer treatment on December 18. Id.

The plaintiff sues Ahlborg "at his fullest & individually." Id. at 4. He seeks compensatory and punitive damages. Id. He also requests that Ahlborg be forced to resign from working at Waupun. Id.

C. Analysis

The plaintiff sues Ahlborg in his "fullest capacity." The court construes this to mean that the plaintiff seeks to sue Ahlborg in his *official* capacity. Claims against a state employee in his official capacity represent another way to plead an action against the entity that the employee represents or for which he works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The plaintiff

alleges that Ahlborg is an employee of the Wisconsin Department of Corrections and works at Waupun. The court construes the claim against Ahlborg in his official capacity as having been brought against the DOC, the agency for which he works. Graham, 473 U.S. at 165–66. Because claims against the DOC are "no different from a suit against the State itself," the court construes the claim as if the plaintiff brought it against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But a state is not a "person" against whom the plaintiff may recover monetary damages under §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

The plaintiff seeks an award of damages. He also wants Ahlborg to resign from his position at Waupun. The plaintiff may file a complaint against Nurse Ahlborg with the State of Wisconsin's Department of Safety and Professional Services. See https://dsps.wi.gov/Pages/RulesStatutes/Nursing.aspx. But the court does not have the authority to direct the DOC to terminate one of its employees or to force the employee to resign from his position. This means that the only relief the plaintiff may pursue in this lawsuit is his request for damages. Because a citizen cannot seek an award of damages from the state (the defendant in the claim against Ahlborg in his official capacity), the plaintiff may proceed on his claim against Ahlborg only in Ahlborg's individual capacity. The court will dismiss the plaintiff's official capacity claim.

The plaintiff's individual capacity claim arises under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim has both an objective and a subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, an incarcerated person must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires the incarcerated person to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that he suffers from severe asthma and was unable to breath because of the chemical agent officers used on Jovan Mull. He alleges that he informed Ahlborg that he could not breathe and needed nebulizer treatment. He asserts that Ahlborg said he would give the plaintiff the treatment once he was done assisting with Mull, but that Ahlborg then walked off. The plaintiff further alleges that Ahlborg later updated the plaintiff's medical chart to show that the plaintiff had requested nebulizer treatment. These allegations are not sufficient to state a claim that Ahlborg *intentionally* refused to treat the plaintiff. If Ahlborg forgot about the plaintiff's request until later, Ahlborg might have been negligent in failing to provide the plaintiff treatment. But negligence is not enough to support an Eighth Amendment

claim. See Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001). That Ahlborg later documented the plaintiff's request in his medical chart complicates the issue. It shows that at some point, Ahlborg acknowledged that the plaintiff had requested treatment. But it does not clarify whether Ahlborg deliberately chose not to treat the plaintiff or whether he simply forgot.

The plaintiff alleges that the Health Services Unit and an unnamed supervisor responded to his request for treatment and falsely told him that he did not receive treatment because he did not tell staff or a nurse that he needed treatment. The plaintiff has not sued the supervisor or anyone from the HSU; he named only Ahlborg as a defendant. Even if he had named the supervisor or an HSU employee as a defendant, it is not clear whether their allegedly false report of the plaintiff's request could constitute a constitutional violation.

Although it is possible the plaintiff may have an Eighth Amendment claim against Ahlborg, his complaint raises more questions than it answers and, as written, does not state a claim for relief. The court will dismiss the complaint but will give the plaintiff an opportunity to amend his complaint to better explain his claim or claims.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate

7

his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights. In particular, the plaintiff must explain why he believes that Ahlborg knew that the plaintiff was a severe asthmatic and why he believes that Ahlborg deliberately refused to provide him with a nebulizer treatment, as opposed to forgetting because he was caught up in other duties.

The court is enclosing a copy of its amended complaint form and instructions. The plaintiff must list the case number for this case on the first page. He must list in the caption of the amended complaint all the defendants that he wants to sue. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete in itself; the plaintiff may not refer the court back to his original complaint, he must repeat in the amended complaint any of the facts from the original complaint that are necessary to his claims.

### III.   Motion to Consolidate (Dkt. No. 8)

On October 12, 2021, the court received from the plaintiff a motion to consolidate this case with another case he has filed, Case No. 21-cv-154. Dkt.

8

No. 8. The plaintiff says that the two cases are very similar—they both arose out of deliberate indifference and failure to assess him for his asthma and to give him a nebulizer treatment—but that they involve different nurses. Id.

On February 8, 2021—the same day the court received the complaint in this case—the court received from the plaintiff the complaint in Case No. 21-cv-154. That complaint alleges that on December 21, 2020—two days after the events he describes in the complaint in this case—a different individual was sprayed with chemical spray, the plaintiff asked a different nurse for an assessment and nebulizer treatment, and that different nurse told him he would be assessed but he was not. Durley v. Karyon, Case No. 21-cv-154 (E.D. Wis.), Dkt. No. 1 at 2-4.

The court understands why the plaintiff wishes to consolidate the two cases—as he points out, the facts are similar. But Federal Rule of Civil Procedure 20(a)(2) says that a defendant may join defendants in a case only if two conditions exist: (A) "any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (B) "any question of law or fact common to all defendants will arise in the action." The transaction or occurrence in this case occurred on December 18, 2020 and involved facts surrounding the chemical spraying of Jovan Mull and Ahlborg's response to the plaintiff. The transaction or occurrence in Case No. 21-cv-154 occurred on December 20, 2020 and involved facts surrounding the chemical spraying of a different individual and

the response of different prison officials and a different nurse. Though the facts are similar, it is not appropriate to join the defendants in a single case.

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that by the end of the day on **June 24, 2022**, the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive* it by the end of the day on June 24, 2022. If the plaintiff files an amended complaint by the above deadline, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the deadline, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **DENIES** the plaintiff's motion to consolidate. Dkt. No. 8.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$346.51** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2).

The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that plaintiffs who are in custody at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are in custody at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

11

his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

Dated in Milwaukee, Wisconsin, this 23rd day of May, 2022.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**